UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HA NGUYEN,<br><br>                                   Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC;<br>and DOES 1 through 10, inclusive,<br><br>                                   Defendants. | Case No.: 3:20-CV-2432 JLS (BLM)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>(ECF No. 40) |

Presently before the Court is Plaintiff Ha Nguyen's Motion for Attorneys' Fees and Costs ("Mot.," ECF No. 40). Also before the Court are Defendant BMW of North America's Opposition to ("Opp'n," ECF No. 43) and Plaintiff's Reply in support of ("Reply," ECF No. 44) the Motion. The Court found this matter appropriately decided on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 167. Having considered the Parties' arguments and the law, the Court **GRANTS IN PART** Plaintiff's Motion and **AWARDS** Plaintiff attorneys' fees in the amount of $33,852.60 plus costs in the amount of $466.81, for a total award of $34,319.41.

/ / /

/ / /

## BACKGROUND

In 2017, Plaintiff purchased a 2014 BMW 435i Convertible (the "Vehicle"), warranted by Defendant. *See generally* Complaint ("Compl.," ECF No. 1). Plaintiff alleges the Vehicle began to suffer from serious defects shortly after it was purchased. *See* Declaration of Jeffrey O. Moses ("Moses Decl.," ECF No. 40-1) ¶ 5. On October 1, 2020, Plaintiff filed a Complaint in state court, alleging three claims under California's Song-Beverly Consumer Warranty Act and violations of California Business and Professions Code § 17200. *See generally* Compl.

In May 2022, the Parties executed a Settlement Agreement. *See* ECF No. 40-1 at 20–25. The agreement provided that Plaintiff would surrender the vehicle and dismiss the action with prejudice. *Id.* at 20. In exchange, Defendant would pay $42,206.71 in satisfaction of Plaintiff's claims, relieve Plaintiff of any remaining obligations on the vehicle, and, relevant here, "pay Plaintiff's attorneys' fees, costs, and expenses . . . in the amount of $15,000, or alternatively, in an amount to be determined by the Court by way of timely noticed motion." *Id.* 21–22. Plaintiff chose the latter option and submitted the instant Motion, seeking attorneys' fees and costs totaling $52,667.58. *See* ECF No. 40.

## LEGAL STANDARD

"District courts follow the forum state's law for awarding attorney's fees when exercising their diversity jurisdiction over state-law claims." *Siafarikas v. Mercedes-Benz USA, LLC*, No. 2:20-CV-01784-JAM-AC, 2022 WL 16926265, at *1 (E.D. Cal. Nov. 14, 2022). Under § 1794(d) of California's Song-Beverly Act, the prevailing party shall be allowed to recover attorneys' fees "based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d). "A prevailing buyer has the burden of showing that the fees incurred were allowable, were reasonably necessary to the conduct of the litigation, and were reasonable in amount." *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994) (internal quotations omitted). "To challenge attorneys' fees as excessive, the challenging party must point to the specific items challenged, with a

sufficient argument and citations to the evidence." *Nai Hung Li v. FCA US LLC*, No. 2:17-CV-06290-R-JEM, 2019 WL 6317769, at *1 (C.D. Cal. July 1, 2019) (internal quotations omitted).

"The California Court of Appeal has expressly held that the lodestar method applies to determining attorneys' fees under the Song-Beverly Act." *Nai Hung Li*, 2019 WL 6317769, at *1 (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1137–39 (2001)). The lodestar method consists of two steps. "First, the court must calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Second, the court must decide whether to enhance or reduce the lodestar figure based on an evaluation of the *Kerr* [*v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992),] factors that are not already subsumed in the initial lodestar calculation." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996)).

## ANALYSIS

Plaintiff seeks to recover a total of $52,667.58, comprised of the following: $43,419.50 in attorneys' fees; a lodestar multiplier enhancement of $8,683.90; an additional $4,000 for fees related to this motion; and $564.18 in costs. Mot. at 23.[1] Defendant challenges Plaintiff's fee submission on the grounds that the proposed hourly rates are unreasonable, the hours logged are excessive, and the lodestar multiplier is not warranted since this matter was straightforward. Opp'n at 2–3. Based on these objections, Defendant requests that the fees and costs be reduced to an amount no more than $15,000. *See id.* at 3.

---

[1] Pin citations to the Motion refer to the CM/ECF page numbers electronically stamped at the top of each page.

### I. Attorneys' Fees

#### A. Lodestar Figure

##### 1. Reasonableness of Hourly Rates

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "[T]he relevant community is the forum in which the district court sits." *Id.* (citing *Barjon v. Dalton*, 132 F.2d 496, 500 (9th Cir. 1997)). "[A]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *Id.* at 980 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). "Once the fee applicant has proffered such evidence, the opposing party must produce its own affidavits or other evidence to rebut the proposed rate." *Cortes v. Metro Life Ins. Co.*, 380 F. Supp. 2d 1125, 1129 (C.D. Cal. 2005) (citing *Phelps Dodge Corp.*, 896 F.2d at 407). If the fee target fails to dispute the market rate with countervailing evidence, a court is permitted to presume the requested rates are reasonable. *See U.S. v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105–06 (9th Cir. 2015). Since this case was pending from 2020 to 2022, with a substantial amount of the work occurring in 2021, the Court will use 2021 rate determinations to establish the prevailing market rate.

Here, Plaintiff seeks approval of the following hourly rates for Plaintiff's counsel and paraprofessionals: $545/hour for Brian K. Cline, principal and founder of Cline, APC, with over 16 years of experience; $410/hour for Mark Johnson, a senior litigation attorney; $395/hour for Jeffrey Moses, an associate attorney; $140/hour for Camille Galanto, a post-bar law clerk; $140/hour for Ms. Cummings, a paralegal; $140/hour for Ms. Petersen, a paralegal; and $140/hour for Ms. Sassa, a paralegal. *See* Mot. at 16–18 (citing Moses Decl. ¶¶ 30–59). To support these figures, Plaintiff points to several cases in which similar

| | |
|---|---|
| 1 | proposed rates were found reasonable or were only slightly reduced.  *See* Moses Decl. |
| 2 | ¶¶ 30–43.  In a recent Southern District of California case, Judge Whelan found that hourly |
| 3 | rates for Mr. Cline and his associate attorneys ranging from $335 to $530/hour were |
| 4 | reasonable and elected to use a blended rate of $425.  *See Tapia v. Ford Motor Co.*, No. |
| 5 | 3:20-CV-01510-W-MSB, 2021 WL 5863597, at *3 (S.D. Cal. Oct. 19, 2021).  Judge |
| 6 | Whelan found that Plaintiff's counsel had "demonstrated expertise in Lemon Law cases, |
| 7 | and their billing rates compare favorably with other attorneys of like skill in Southern |
| 8 | California that represent plaintiffs."  *Id.*  Additionally, in *Nagesh v. BMW of North* |
| 9 | *America, LLC*, an Eastern District of California judge found reasonable an hourly rate of |
| 10 | $450/hour for Mr. Cline, $300/hour for Mr. Moses, and roughly $125/hour for Ms. Galanto. |
| 11 | No. 218CV00839KJMJDP, 2021 WL 1060357, at *5 (E.D. Cal. Mar. 19, 2021). |
| 12 |       Plaintiffs also present a declaration from Michael R. Vachon, a San Diego based |
| 13 | attorney who surveys fee rates of attorneys who specialize in consumer law.  *See* ECF No. |
| 14 | 40-1 at 229–36.  That declaration was apparently created in 2013, and the hourly rates cited |
| 15 | are for attorneys with more experience than Plaintiff's counsel.  *See id.* at 235 (San Diego |
| 16 | attorney with 30 years of experience with hourly rate of $520; San Diego attorney with 35 |
| 17 | years of experience with hourly rate of $475; and San Diego attorney with 32 years of |
| 18 | experience with hourly rate of $575).  Therefore, the Court affords Mr. Vachon's |
| 19 | declaration little weight. |
| 20 |       Defendant, on the other hand, requests the following hourly rates: $325/hour for Mr. |
| 21 | Cline, $225/hour for Mr. Johnson, and $225/hour for Mr. Moses.  Opp'n at 14.  Defendant |
| 22 | does not dispute the proposed rates for the paralegals and law clerk who worked on |
| 23 | Plaintiff's case.  *See id.* at 13–14.  Defendant notes that the court in *Aispuro v. Ford Motor* |
| 24 | *Co.*, No. 18-CV-2045 DMS (KSC), 2020 WL 4582677, at *4 (S.D. Cal. Aug. 10, 2020), |
| 25 | approved identical rates for partners and associates in a similar lemon law case.  Those |
| 26 | rates were based on the 2018 Real Rate Report, which reported that hourly rates for |
| 27 | "partners practicing consumer litigation generally have hourly rates ranging from $300 to |
| 28 | $625," and "the range of reasonable rates for associates in San Diego is $150 to $180, and |

the range for associates practicing in consumer goods cases is between $205 and $265." *Id*. In *Aispuro*, the court also noted that "the Real Rate Report is 'a much better reflection of true market rates than self-reported rates[.]'" *Id*. While the Court would prefer to use an objective benchmark to guide its determination of what constitutes a reasonable hourly rate, the Court is also hesitant to rely on data that predates the majority of the events in this case by roughly three years.

More recent data, however, provides useful insight into prevailing rates in the community of San Diego. According to the 2021 Real Rate Report, the mean hourly rate for litigation partners in San Diego in 2021 was $557/hour, while the median rate was $425/hour. Wolters Kluwer, *2021 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* 21 (2021). Of all partners surveyed (not just those in San Diego), those with fewer than 21 years of experience had a mean rate of $663/hour and a median rate of $540/hour. *Id.* at 34. The mean rate for litigation associates in San Diego was $254/hour, while the median was $175/hour. *Id.* at 22. Of all associates in San Diego with seven years of experience or more in either litigation or non-litigation, the mean rate was $471/hour and the median rate was $374/hour. *Id.* at 27. The national rates for litigators working in the "General Liability: Consumer Related Claims" practice area were as follows: mean rate of $553/hour and median rate of $530/hour for partners, and mean rate of $430/hour and median rate of $374/hour for associates. *Id.* at 53.

Based on the figures listed above, the Court finds the following rates to be reasonable: $525/hour for Mr. Cline, $375/hour for Mr. Johnson, and $325/hour for Mr. Moses. First, Mr. Cline is a litigation partner with 16 years of experience, Mot. at 16–17; therefore, a rate of $525/hour is within the prevailing rate range for lawyers with similar roles and experience in San Diego. *See supra*; *see also Goglin v. BMW of N. Am., LLC*, 4 Cal. App. 5th 462, 473 (2016) (finding hourly rate of $575 to be reasonable for attorney in Song-Beverly action). Second, Mr. Johnson is senior litigation counsel with Cline, APC, and has been working for the firm since June 2020. Moses Decl. ¶ 52. He was admitted to the bar in 2015, *id.* ¶ 30, and prior to joining Cline, APC, he handled business

negotiations and provided legal guidance for an aviation company, *id.* ¶ 52. While Plaintiff has not specified Mr. Johnson's years of legal experience, these facts suggest roughly six years of legal experience in 2021. Therefore, a rate of $375/hour is within the range of appropriate rates for lawyers with similar roles and experience in San Diego. *See supra* p. 6. Third, Mr. Moses has been employed at Cline, APC since December 2018, and prior to that, he worked as a solo practitioner. Moses Decl. ¶ 49. Again, Plaintiff does not appear to have provided the Court with a definite representation of Mr. Moses's legal experience. At a minimum, however, Mr. Moses had three years of legal experience with Cline, APC in 2021. As mentioned above, the Eastern District of California has previously found a rate of $300/hour to be reasonable for services provided by Mr. Moses between 2017 and 2019. *Supra* p. 5. Accounting for Mr. Moses's interim experience and inflation, $325/hour is a reasonable adjustment upward from that figure. Moreover, this rate appears to be generally within the appropriate range of hourly rates for litigation associates in San Diego working in the consumer-related claims practice area. *See supra* p. 6. Defendants have not provided any evidence showing such rates to be excessive for lawyers with roles and experience similar to those of Mr. Cline, Mr. Johnson, or Mr. Moses. Finally, as noted above, Defendants do not dispute the rate of $140/hour for Ms. Galanto, Ms. Cummings, Ms. Petersen, and Ms. Sassa. Accordingly, the Court finds the $140/hour rate to be reasonable.

        2.     *Reasonableness of the Hours Expended*

"The party seeking an award of fees should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 434. "The district court . . . should exclude . . . hours that were not 'reasonably expended'" and "hours that are excessive, redundant, or otherwise unnecessary." *Id.* "Overlitigation deemed excessive does not count towards the reasonable time component of a lodestar calculation," *Puccio v. Love*, No. 16-CV-02890 W (BGS), 2020 WL 434481, at *6 (S.D. Cal. Jan. 28, 2020) (citing *Tomovich v. Wolpoff & Abramson, LLP*, No. 08cv1428-JM (BLM), 2009 WL 2447710, at *4–5 (S.D. Cal. Aug. 7, 2009)), although the Ninth Circuit has also instructed that, "[b]y and large, the court should defer

1  to the winning lawyer's professional judgment as to how much time he was required to
2  spend on the case; after all, he won, and might not have, had he been more of a slacker."
3  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  Ultimately, "the
4  [opposing party] bears the burden of providing specific evidence to challenge the accuracy
5  and reasonableness of the hours charged." *McGrath*, 67 F.3d at 255 (citing *Blum*, 465 U.S.
6  at 892 n.5; *Gates v. Gomez*, 60 F.3d 525, 534–35 (9th Cir. 1995)).  "[F]ail[ure] to offer
7  either countervailing evidence or persuasive argumentation in support of [the fee target's]
8  position" permits the district court to presume a properly supported fee application is
9  reasonable.  *$28,000.00 in U.S. Currency*, 802 F.3d at 1106–07 (citations and internal
10 quotation marks omitted).

11  Here, Plaintiff seeks to recover fees for 122.5 hours billed over the period between
12 October 2020 and November 2022.  Mot. at 15.  Plaintiff has provided the Court with
13 detailed account statements for this matter that contain the billing entries for the hours
14 claimed.  *See generally id*.  Defendant argues that Plaintiff's counsel excessively billed for
15 drafting the motion to remand, opposing the motion to compel arbitration, and opposing
16 the ex parte motion to stay discovery pending Defendant's motion to compel arbitration.
17 Opp'n at 8–12.  Further, Defendant argues that all billings by paralegals for clerical work
18 should be excluded.  *Id*. at 12

19  As an initial matter, the Court will not second guess the litigation tactics used by
20 Plaintiff, as they are to be considered the prevailing party for purposes of this motion.  *See*
21 *Moreno*, 534 F.3d at 1112; ECF No. 40-1 at 22.  Accordingly, the Court will treat all motion
22 practice conducted by both parties in this matter as reasonably necessary.

23  As to the motion to remand, the Court is unpersuaded by Defendant's argument.
24 Defendant claims that Plaintiff filed "nearly the exact same motion to remand in several
25 other matters before *this* Court," but having reviewed the motions cited to by Defendant,
26 the Court has not discovered the similarity claimed by Defendant.  For example, Defendant
27 points to *Vazquez-Ceron v. Ford Motor Co.*, No. 20-CV-1318-W-KSC (S.D. Cal.), ECF
28 No. 7-1.  A side-by-side comparison between the motion to remand in that case and the

one in this case reveals differing cases cited, arguments raised, and factual backgrounds. *See* ECF No. 9; *Vazquez-Ceron*, No. 20-CV-1318-W-KSC, ECF No. 7-1. Even the "legal standard" sections, which one would presume to be relatively similar given the stability of the law in this area, show significant differences. *See* ECF No. 9; *Vazquez-Ceron*, No. 20-CV-1318-W-KSC, ECF No. 7-1. Of course, there is some overlap between the motions, but this is to be expected, as both motions were to remand Song-Beverly actions back to state court after a defendant vehicle company removed them to federal court. Given the significant differences between the motions, the Court finds Defendant's characterization of the motion to remand as a "copy-and-paste filing" unavailing. The Court is also unpersuaded that the motion to remand was futile or frivolous. Plaintiffs may choose where to initiate their case, and if a defendant interferes with that preference, there is no obligation to comply with a defendant's demands without protest. *See* 28 U.S.C. § 1447(c) (permitting plaintiffs to submit motions to remand following removal). Therefore, the Court declines to deduct these hours from the lodestar calculation.

As to Plaintiff's Opposition to the Motion to Compel Arbitration, Defendant argues that the 14.1 hours spent drafting and filing the opposition were excessive because the opposition is "nearly identical" to other oppositions filed by Cline APC in the past. *See* Opp'n at 11. To support this argument, Plaintiff cites to documents filed in three different cases in the Southern District of California involving the Defendant and Plaintiff's counsel: *Zeto v. BMW of North America, LLC*, No. 20-CV-1380-GPC-KSC (ECF No. 21, filed Sept. 11, 2020); *Rashid v. BMW of North America, LLC*, No. 20-CV-573-L-DEB (ECF No. 17, filed May 12, 2020); and *Ronquillo v. BMW of North America, LLC*, No. 20-CV-1413-W-WVG (ECF No. 17, filed Oct. 5, 2020). As to the filing cited in *Zeto*, ECF No. 21 is an opposition to a motion to remand and therefore is not relevant to Defendant's argument. The second document cited from the *Rashid* case bears little to no similarity to the opposition filed in this case. For example, the *Rashid* opposition cited different cases and statutes, relied on different factual backgrounds, and involved different arguments. *See generally Rashid*, No. 20-CV-573-L-DEB, ECF No. 17. Much of the *Rashid* opposition

concerned whether Defendant had standing to raise certain arguments. *See id.* at 5–15. There was no question of standing in this case. *See generally* ECF No. 18. Finally, the *Ronquillo* opposition involved unconscionability, standing, and fraud, none of which are present in the opposition in this case. *See generally Ronquillo*, No. 20-CV-1413-W-WVG, ECF No. 17. Accordingly, the Court is not persuaded that the 14.1 hours spent on Plaintiff's Opposition to the Motion to Compel Arbitration were excessive. Consequently, the Court declines to deduct these hours from the lodestar calculation.

Defendant also complains that they should not be charged for Plaintiff's Opposition to the Ex Parte Motion to Stay Discovery, as Plaintiff's counsel necessitated the filing of the ex parte motion by "improperly" serving discovery while the Motion to Compel Arbitration was still pending. Opp'n at 11–12. The Court is not persuaded by Defendant's argument. While Plaintiff's counsel is likely familiar with the procedural etiquette expected when a motion to compel arbitration is pending, Defendant has pointed to no rule that demands discovery come to an immediate halt upon the filing of such a motion. The opposite is closer to the truth, as a party seeking a stay of discovery carries a "heavy burden" of making a "strong showing" of "particular and specific need for the protective order." *See United States v. Dynamic Med. Sys., LLC*, No. 117CV01757NONESAB, 2020 WL 3035219, at *3 (E.D. Cal. June 5, 2020) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); Wright & Miller, *Federal Practice and Procedure § 2035*; A.W. Tashima & J. Wagstaffe, *Federal Civil Procedure Before Trial* § 11:88). Moreover, the Ninth Circuit has not "established a clear standard for deciding whether to stay discovery when a potentially dispositive motion is pending," as Magistrate Judge Major noted in ruling on the motion. ECF No. 25 at 4 (citing *Mlejnecky v. Olympus Imaging Am., Inc.*, No. 2:10-CV-02630, 2011 WL 489743, at *6 (E.D. Cal. Feb. 7, 2011). Rather, there is non-binding authority from other California district courts suggesting there are three different methods to determine whether to stay discovery under such circumstances. ECF No. 25 at 4–5. Magistrate Judge Major used a combination of those methods in this case and decided in favor of Defendant. *Id.* at 5–6. But that does not imply that Plaintiff was

incorrect in serving discovery after the motion to compel arbitration was filed, nor does it imply that Plaintiff's opposition was in any way frivolous or excessive. Eliminating all hours billed on this issue would punish Plaintiff's counsel for legitimately attempting to combat the prospect of a lengthy delay in the proceedings. Accordingly, the Court declines to deduct these hours from the lodestar calculation.

Finally, the Court excludes from the lodestar calculation tasks that are purely clerical. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989). Work that is clerical in nature should be "subsumed in firm overhead rather than billed at paralegal rates." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). Accordingly, the Court excludes from the award of fees the hours expended by Ms. Cummings, Ms. Sassa, and Ms. Petersen updating calendars, receiving documents, receiving incoming mail, reviewing upcoming deadlines, saving documents to the file, and performing other administrative tasks. Because several entries are block-billed and cannot be separated from otherwise allowable tasks, the Court finds it proper to exclude entries containing clerical work in full, resulting in the deduction of a total of 4.9 hours from Ms. Cummings's time, 1.0 hour from Ms. Sassa's time, and 2.0 hours from Ms. Petersen's time. *See* ECF No. 40-1 at 240–49.

**B.    *Lodestar Multiplier Enhancement***

Plaintiff seeks a 0.2 multiplier enhancement to the lodestar due to the risk of non-recovery and the delay in payment in this case. Mot. at 20–21. Defendant argues that a lodestar multiplier should be denied because there is no evidence that the issues presented in this litigation were novel or complex, and there is little to no contingent risk given the Song-Beverly Act's statutory fee provisions. Opp'n at 15–16.

"[I]n appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr*." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (citing *D'Emmanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1383 (9th Cir. 1990), *overruled on other grounds by Dague*, 505 U.S. 557). The *Kerr* factors are:

> (1) the time and labor required[;] (2) the novelty and difficulty of the questions involved[;] (3) the skill requisite to perform the legal service properly[;] (4) the preclusion of other employment by the attorney due to acceptance of the case[;] (5) the customary fee[;] (6) whether the fee is fixed or contingent[;] (7) time limitations imposed by the client or the circumstances[;] (8) the amount involved and the results obtained[;] (9) the experience, reputation, and ability of the attorneys[;] (10) the 'undesirability' of the case[;] (11) the nature and length of the professional relationship with the client[;] and (12) awards in similar cases.

526 F.2d at 70. "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Intel Corp.*, 6 F.3d at 622 (citing *D'Emanuele*, 904 F.3d at 1383). While the court may rely on any of these factors to increase or decrease the lodestar figure, there is a "'strong presumption' that the lodestar is the reasonable fee." *Crawford v. Astrue*, 586 F.3d 1142, 1149 (9th Cir.2009) (quoting *City of Burlington*, 505 U.S. at 562); *accord Harman v. City & Cnty. of San Francisco*, 158 Cal. App. 4th 407, 416 (2007).

Here, the Court finds that the lodestar amount should not be increased on the basis of the *Kerr* factors. While there was some risk of non-recovery in this case, almost every other factor counsels against increasing the lodestar figure. The amount of time and labor required was not unduly burdensome, nor were the legal issues involved in this case particularly complex. *See Steel v. Gen. Motors Corp.*, 912 F. Supp. 724, 746 (D.N.J. 1995) ("[T]he issues in lemon law litigation are not complex and do not require a significant amount of legal analysis or novel pleading."), *aff'd sub nom. Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968 (D.N.J. 1996). The Court does not doubt the legal skills of either Party's counsel, but the Court does doubt that those skills were strenuously exercised in this matter. Plaintiff's counsel does not claim that they were precluded from other work by taking on Plaintiff's case. *See generally* Mot. Even were that the case, Plaintiff offers no evidence of a customary fee in such circumstances. *See generally id.* There were no time limitations imposed on Plaintiff's counsel. *Id.* The amount at stake was relatively

low, although the results obtained were positive. The experience and ability of Plaintiff's counsel has already been factored into the lodestar calculation, and there is nothing prompting the Court to doubly award Plaintiff's counsel for their expertise. *See supra* pp. 4–7. Plaintiff's counsel do not suggest this case was undesirable. *See generally* Mot. The relationship between Plaintiff and counsel does not appear to extend beyond this case. *Id.* And finally, as discussed above, the award of attorneys' fees is similar to those in similar cases involving Plaintiff's counsel, *supra* pp. 4–5.

Accordingly, the Court finds a lodestar multiplier enhancement to be inappropriate in this case.

### C. Additional Fees Related to This Motion

Plaintiff seeks an additional $4,000 for the time expended reviewing and responding to Defendant's Opposition. *See* Mot. at 17; *see generally* Reply; ECF No. 44-1 at 5–6. The request is supported by billing records showing Mr. Moses spent 9.1 hours reviewing Defendant's Opposition and drafting the Reply, and other members of Cline, APC attended various meetings and performed administrative work related to the motion. ECF No. 44-1 at 5–6. Defendant does not directly address the issue of additional fees in its Opposition, *see generally* Opp'n, although faulting them for this deficiency is not justified considering Plaintiff had not yet provided any billing statements supporting the estimate.

Based on its review of the post-Motion billing statements, the Court will award $2,307.50 for fees related to replying to Defendant's Opposition. The billing statements submitted by Plaintiff show that many of the administrative entries are unnecessary, duplicative, or clerical in nature. *See* ECF No. 44-1 at 5–6. Therefore, the Court will consider only the 9.1 hours Mr. Moses spent reviewing Defendant's Opposition and drafting the Reply thereto. The Court will deduct two hours from that total, as the Court finds that the Reply is unnecessarily lengthy, resulting in a total of 7.1 hours. At Mr. Moses's reasonable hourly rate of $325/hour, Plaintiff's award for the additional work on this motion is $2,307.50.

/ / /

### D. Additional Reduction

"[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). "This reduction is in addition to the line-item reductions explained above." *Salmeron v. Ford Motor Co.*, No. 218CV07266SVWPLA, 2020 WL 9217979, at *8 (C.D. Cal. July 14, 2020). Having closely examined the record, and in consideration of the Court's experience with Song-Beverly cases, the Court finds that several inefficiencies are not accounted for in the above reductions. Accordingly, the Court imposes an additional 10 percent "haircut" to the revised lodestar figure.

### E. Summary

In sum, the Court will award Plaintiff $33,852.60 in attorneys' fees. That figure was arrived at under the following calculations:

| Attorney | Reasonable Rate × | Reasonable Hours = | Fee |
| --- | --- | --- | --- |
| Brian Cline | $525 | 1.7 | $892.50 |
| Mark Johnson | $375 | 24.90 | $9,337.50 |
| Jeffrey Moses | $325 | 68.5 | $22,262.50 |
| Camille Galanto | $140 | 15.4 | $2,156 |
| Shawnee Cummings | $140 | 6.5 – 4.9 = 1.6 | $224 |
| Lisa Sassa | $140 | 3.3 – 1.0 = 2.3 | $322 |
| Kilee Petersen | $140 | 2.8 – 2.0 = 0.8 | $112 |
| Post-Motion Fees | --- | --- | $2,307.50 |
| **Subtotal** | --- | --- | **$37,614.00** |
| "Haircut" Reduction | --- | --- | ($3,761.40) |
| **Total** | | | **$33,852.60** |

///

## II. Costs

Plaintiff's counsel also seeks costs in the amount of $564.18, comprising $459.31 in filing and service of the Complaint and summons, $7.50 in mailing expenses, and $97.37 in Westlaw research expenses. *See* ECF No. 40-1 at 250. Plaintiff provided the Court with invoices itemizing the costs. *See id*. Defendant does not object to Plaintiff's request for reimbursement for these costs. *See generally* Opp'n.

First, filing fees, service of process, and mailing expenses are "standard expenses incurred in prosecuting a civil lawsuit of this kind, and are the type of expenses typically billed by attorneys to paying clients in the marketplace." *In re Packaged Seafood Prod. Antitrust Litig.*, No. 15-MD-2670 DMS (MDD), 2022 WL 3588414, at *3 (S.D. Cal. Aug. 19, 2022). Accordingly, the Court finds appropriate the costs related to filing, service, and mailing expenses. *See Winters v. Two Towns Ciderhouse, Inc.*, No. 20-CV-00468-BAS-BGS, 2021 WL 1889734, at *3 (S.D. Cal. May 11, 2021) (awarding costs for "filing and serving the complaint, transmitting copies of ECF filings to the Court, [and] mailing expenses"). Second, the Ninth Circuit has held that computer-based legal research may be recovered "if separate billing for such expenses is 'the prevailing practice in the local community.'" *Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1259 (9th Cir. 2006). Plaintiff has not provided any evidence that separate billing for legal research on Westlaw is the prevailing practice in the local community. Moreover, it is unclear "whether Plaintiff's firm paid these exact charges to Westlaw or whether they in fact pay a flat monthly rate and somehow apportion those costs among their cases." *Urena v. Cent. California Almond Growers Assn.*, No. 118CV00517NONEEPG, 2021 WL 5435736, at *1 (E.D. Cal. Jan. 28, 2021). "Without more information, the court cannot determine whether these expenses are reasonable or should instead be categorized as a fixed cost." *Mauss v. NuVasive, Inc.*, No. 13CV2005 JM (JLB), 2018 WL 6421623, at *9 (S.D. Cal. Dec. 6, 2018). Consequently, the Court declines to award Plaintiff's counsel costs related to Westlaw research.

/ / /

In sum, the Court will award Plaintiff's counsel $466.81 in costs, comprised of expenses related to filing, service, and mail fees, and excluding costs associated with legal research on Westlaw.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** Plaintiff's Motion for Attorneys' Fees (ECF No. 40) and **AWARDS** Plaintiff attorneys' fees in the amount of $33,852.60 plus costs in the amount of $466.81, for a total award of $34,319.41.

**IT IS SO ORDERED.**

Dated: January 12, 2023

Hon. Janis L. Sammartino
United States District Judge